# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER ALEXANDER MATHIS :

    **Petitioner** :

            CIVIL ACTION NO. 3:19-1377

    v. :

            (Judge Mannion)

KEVIN KAUFFMAN, :
Superintendent

    **Respondent** :

## MEMORANDUM

### I. Background

Petitioner, Christopher Alexander Mathis, an inmate confined in the State Correctional Institution, Huntingdon, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. He challenges the legality of a West Virginia detainer lodged against him. (Doc. 1, petition).

Specifically, he claims that "since October 26, 2017, the United States Marshal's Service has caused a detainer to be lodged against Petitioner (who is serving a state sentence of 3 to 10 years following his conviction of various drug violations), relating to alleged violations of the terms of Petitioner's federal supervised release." Id. Despite Petitioner's requests, including the filing of a Motion for Transport on or about May 26, 2019, no action has been taken to resolve the allegations of violation of the terms of Petitioner's supervised release. Id. Petitioner alleges that "as a consequence of the

detainer which remains lodged against [him], Petitioner has and continues to be denied participation in various rehabilitative programming, employment opportunities and housing status." Id. He, thus, challenges the West Virginia District Court's "refusal to take action on alleged violation of supervised release, relating to which a detainer remains lodged against him." Id. For relief, Petitioner seeks "an order directing action be taken on alleged violation of the terms of Petitioner's supervised relief or direct that the detainer that remains lodged against Petitioner therewith be quashed." Id. For the reasons outlined below, the Court will deny the petition for writ of habeas corpus.

## II. Discussion

Habeas corpus petitions brought under §2254 are subject to summary dismissal pursuant to Rule 4 ("Preliminary Consideration by the Judge") of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. §2254 (1977). See, e.g., Patton v. Fenton, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979). The Rules are applicable to §2241 petitions under Rule 1(b). Id.

In pertinent part, Rule 4 provides that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." In this case, it is apparent from the face of the petition

2

that Mathis cannot seek habeas relief in this Court.

Specifically, the Court finds that the deprivation of which Mathis complains - his preclusion from participating in prison rehabilitative programs - would remain a deprivation imposed by the state having custody over him, more specifically, the Pennsylvania Department of Corrections, and not by any federal authority. *Cf.* Caruso v. United States Bd. of Parole, 570 F.2d 1150, 1155 (3d Cir.1978) ("He does not nor can he charge that the federal Parole Board is denying him access to prison programs ... because it has issued a parole violator warrant .... [Rather], it is the State of New Jersey, not the federal authorities, which is alleg[edly] depriving [petitioner] of his 'rights'. As such, whatever the basis for [petitioner's] charges (and we express no view as to their validity), the appropriate targets for [his] attack are state prison officials ....").

Petitioner appears to argue that the collateral consequences of the continued parole detainer warrant violates his right to due process. However, under Moody v. Daggett, 429 U.S. 78 (1976), Petitioner is not entitled to the due process protections with regards to the parole revocation process until the warrant is executed and he is taken into custody as a parole violator. The collateral consequences of the detainer do not deprive Petitioner of his right to due process.

It is by now well-established that a parolee facing revocation of parole

has a constitutional liberty interest in his freedom, despite its conditional and qualified nature. Morrissey v. Brewer, 408 U.S. 471, 483 (1972). As a consequence, the government may not revoke parole without providing due process as required by the Fifth or Fourteenth Amendments to our Constitution. Morrissey, 408 U.S. at 483; United States v. Lloyd, 566 F.3d 341, 343 (3d Cir. 2009). Among the requirements necessary to comport with due process, a Petitioner is entitled to a revocation hearing within a reasonable time after being taken into custody. Morrissey, 408 U.S. at 487-89; United States v. Dobson, 585 F.2d 55, 61 (3d Cir. 1978). These rights do not attach, however, until the execution of a parole violator warrant "for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant." Moody, 429 U.S. at 87.

However, a federal prisoner serving his sentence for a criminal conviction that also amounts to a violation of parole for an earlier conviction has lost his liberty not because of the outstanding parole violator warrant, but because of the criminal conviction. Id. at 86–87. "Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the [USPC's] intent to defer consideration of parole revocation to a later time." Id. at 86. Thus, "a federal parolee, when convicted of and imprisoned by federal authorities for another crime committed while on parole, has no right to a prompt revocation hearing upon the issuance of a parole violator warrant

4

based on that second crime." U.S. ex rel. Caruso v. U.S. Bd. of Parole, 570 F.2d 1150, 1153 (3d Cir. 1978).

In the instant case, Petitioner presently is in custody at the SCI-Huntingdon, serving his state court sentence. Generally, consistent with federal regulations, the USPC must schedule a revocation hearing within ninety days of execution of the violator warrant. 28 C.F.R. §2.49(f). Petitioner appears to suggest that the delay from the imposition of the detainer until its anticipated execution is unreasonable and deprives him of a protected liberty interest without due process. However, in this case, Petitioner cannot avail himself of this argument, for until the warrant is executed, he has no lost liberty interest due to the outstanding parole violator warrant. See Moody, 429 U.S. at 86–87; U.S. ex rel. Caruso, 570 F.2d at 1153.

Petitioner also argues that the imposition of the detainer and delay in executing the warrant deny him the opportunity to participate in prison rehabilitation and early release programs, which Petitioner contends is a deprived liberty interest without due process. These collateral consequences of the detainer do not, however, rise to the level of a constitutional deprivation for which habeas relief can be granted.[1]

---

1.
In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification, so long as the conditions or degree of the inmate's confinement falls within the sentence

5

The Supreme Court in Moody directly addressed and rejected a similar argument, where the petitioner maintained "that the pending warrant and detainer adversely affect [ed] his prison classification and qualification for institutional programs." 429 U.S. at 88 n. 9. The Supreme Court declined to grant relief for the denial of such benefits that are left to the "full discretion" of prison officials and so the petitioner had "no legitimate statutory or

---

    imposed upon him and does not otherwise violate the U.S. Constitution. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224–25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody, 429 U.S. at 88 n. 9 (noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"); Wesson v. Atlantic County Jail Facility, 2008 WL 5062028, *6 (D.N.J. Nov. 26, 2008) (it is well established that an inmate has no liberty interest in a particular custody level or place of confinement). See also Sandin v. Connor, 515 U.S. 472, 484–86 (1995) (holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment"); Kentucky Dept. of Corrections v. Thompson, 490 U .S. 454, 463 (1989) (holding that a liberty interest arises only where a statute or regulation uses "explicitly mandatory language" that instructs the decision-maker to reach a specific result if certain criteria are met). See also Marti v. Nash, 227 Fed. Appx. 148, 150 (3d Cir. 2007) (inmate has no due process right to any particular security classification and, therefore, could not challenge his public safety factor of "greatest severity", which prevented his placement in a minimum security facility); Day v. Nash, 191 Fed. Appx. 137, 139–40 (3d Cir. 2006) (upholding application of a public safety factor to inmate's custody classification which prevented inmate's placement in a minimum security camp).

constitutional entitlement sufficient to invoke due process." Moody, 429 U.S. at 88 n. 9; see Becerra v. Miner, 248 F. Appx. 368, 370 (3d Cir. 2007) (inmate assigned public safety factor of "deportable alien" had no liberty interest in his consequential disqualification for certain institutional programs); Richardson v. Joslin, 501 F.3d 415, 419–20 (5th Cir. 2007) (prisoner's inability to pursue early release due to his detainer does not implicate his due process rights, for he had no liberty interest in a sentence reduction under Section 3621(e)); James v. DeRosa, Civil No. 04–3808, 2005 WL 2247951, at *3–4 (D.N.J. Sept. 14, 2005) (holding that the existence of a detainer is "a legitimate factor to consider in determining eligibility for custody-related programming," specifically the community transitional services component of the BOP substance abuse treatment program, and thus an inmate with a detainer cannot challenge the BOP decision on these grounds). See also Meachum, 427 U.S. at 226–28 (holding that a statute which grants the prison administration discretion does not confer a right on an inmate).

Therefore, in the absence of a protectable interest in either his prison classification, his qualification for rehabilitative programs, or early release, Petitioner cannot show a constitutional deprivation as a result of the existence of the parole violator detainer or the delay in holding a parole revocation hearing. See Merriweather v. U.S. Parole Comm'n, No. 08–1977, 2009 WL 1684589, at *5 (E.D. Cal. June 16, 2009) (petitioner not entitled to relief based

on fact that parole violator detainer prevented placement in a halfway house and early release); Bovio v. U.S. Parole Comm'n, No. 06–15213, 2008 WL 1808323 (E.D. Mich. Apr. 21 2008) (same); Evans v. Frank, No. 07–631, 2007 WL 4207517 (E.D.Wis. Nov. 26, 2007) (same). The Court having found the Petitioner was not deprived of due process as a result of the detainer and delay in receiving a parole revocation hearing or the collateral consequences of that delay, his present incarceration is lawful and the Court will deny his request for habeas relief for lack of merit.

### III. Conclusion

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. §2241 will be denied for lack of merit. A separate Order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 20, 2019**

19-1377-01